IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| LAURA SCHMIDT,        )<br>                             )<br>        Plaintiff,      )<br>                             )<br>    v.                    )<br>                             )<br>MEDICALODGES, INC.,   )<br>                             )<br>        Defendant.     )<br>                             )<br>_____) | Case No. 06-2260-JWL |

## **MEMORANDUM AND ORDER**

In this action, plaintiff Laura Schmidt asserts a claim against her former employer, defendant Medicalodges, Inc., for gender discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1). Specifically, plaintiff alleges that she was subjected to sexual harassment in the form of a hostile work environment. This matter comes before the Court at this time on defendant's motion for summary judgment (Doc. #34). As set forth below, defendant's motion is granted with respect to plaintiff's constructive discharge claim, but the motion is denied in all other respects.

**I.     Facts**[1]

Defendant is a company that provides long- and short-term care to elderly patients, and it operates a facility in Kansas City, Kansas. On July 26, 2004, defendant hired plaintiff as a nurse at that facility. Plaintiff's immediate supervisor was Shawn Garbin, the facility's Director of Nursing. Mr. Garbin's immediate supervisor was Julie Melvin, the facility's Administrator. Ms. Melvin answered to Cindy Frakes, a regional manager.

Defendant promulgated anti-discrimination and sexual harassment policies that were contained in booklets distributed to all employees. Those policies provided for various persons to whom employees could report harassment, including defendant's Corporate Compliance Committee. Employees could also call a toll-free hotline to report harassment, a fact publicized on posters displayed at defendant's facilities. With respect to the issue of retaliation, the written personnel policies assured employees that defendant would protect, to the maximum extent possible, the confidentiality of persons reporting misconduct; instructed supervisors not to take any action against any person reporting misconduct; and indicated to employees that "[a]s long as you have a good faith belief that a violation occurred, you will not be subject to any discipline." Employees received training concerning defendant's harassment policies.

---

[1]The facts as stated in this opinion are uncontroverted for purposes of defendant's motion or are set forth in the light most favorable to plaintiff, the non-moving party, as supported in the parties' briefs. Additional facts are discussed as relevant throughout the opinion.

2

On March 24, 2005, defendant received a report from employee Angela Mitchell of sexual harassment by Mr. Garbin. Mr. Garbin was immediately suspended, pursuant to defendant's policy of suspending any person accused of such conduct. Ms. Frakes and Ms. Melvin investigated the complaint by interviewing and taking statements from Ms. Mitchell and other employees. During the investigation, defendant received various other complaints of sexual harassment perpetrated by Mr. Garbin. On March 28, 2005, defendant terminated Mr. Garbin's employment.

During her employment with defendant, plaintiff never complained of any sexual harassment. In April or May 2005, plaintiff resigned from her employment with defendant. Plaintiff's letter of resignation referred to plaintiff's health and her need to cut back from her many jobs, but it did not mention any sexual harassment. Months later, after learning that another former employee was pursuing a harassment claim, plaintiff asserted a claim against defendant before the EEOC and subsequently brought the instant action.

## II.  Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th

Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 910th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and

inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. Constructive Discharge Claim

Summary judgment is appropriate on plaintiff's claim that she was constructively discharged. First, the Court agrees with defendant that such a claim may be relevant as an element of damages, but cannot constitute an independent cause of action. *See, e.g., Smith v. Turner Unified Sch. Dist. #202*, No. 03-2516-KHV, 2004 WL 2607553, at *5 (D. Kan. Nov. 16, 2004) (citing cases). Second, as defendant notes, plaintiff appeared to testify, upon realizing that Mr. Garbin's termination preceded her resignation, that her resignation was in fact caused by factors other than Mr. Garbin's harassment. Plaintiff states in her brief that she does not oppose summary judgment on this claim. Accordingly, summary judgment is awarded on plaintiff's constructive discharge claim, whether asserted as an independent cause of action or as an element of damages.

### IV. Sexual Harassment Claim

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). This statutory provision prohibits subjecting an employee to a hostile work environment. *See Dick v. Phone Directories Co.*, 397 F.3d 1256, 1262 (10th Cir. 2005) (citing *Meritor Savings Bank, FSB v. Vinson*,

5

477 U.S. 57, 65 (1986)). To establish that a sexually hostile work environment existed, plaintiff must prove the following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of plaintiff's employment and created an abusive working environment. *See id.* at 1262-63. In addition, plaintiff must establish that defendant is liable for the alleged sexually hostile work environment. *See Hollins v. Delta Airlines*, 238 F.3d 1255, 1257-58 (10th Cir. 2001).

Defendant argues that it is entitled to summary judgment on the alternative grounds that (1) plaintiff cannot establish sexual harassment that was sufficiently severe or pervasive, and (2) defendant cannot be held vicariously liable for any harassment of plaintiff by Mr. Garbin, pursuant to the affirmative defense recognized by the Supreme Court in the companion cases of *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). The Court addresses these arguments in turn.

### *A. Severe or Pervasive Sexual Harassment*

For a sexual harassment claim to survive summary judgment, "a plaintiff must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1280 (10th Cir.

2005) (quoting *Penry v. Federal Home Loan of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998)). The severity and pervasiveness of the conduct must be judged from both an objective and a subjective perspective; that is, "the environment must be both subjectively and objectively hostile or abusive." *Id*. (citing *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 23 (1993)).

Defendant has not argued in its motion that the environment created by Mr. Garbin's harassment was not subjectively hostile, and plaintiff testified that she was traumatized by the harassment at any rate. Accordingly, the Court examines whether plaintiff has produced evidence satisfying the objective prong of the analysis.

To evaluate whether a working environment is objectively hostile or abusive, the court examines all the circumstances, including "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). The Tenth Circuit has noted that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999) (internal quotation omitted).

Plaintiff testified that Mr. Garbin once walked up behind her and pushed his body into hers, and that she was able to feel through their clothes that Mr. Garbin was pressing his erect penis against her buttocks. This incident alone might in itself be enough to

7

raise a question of fact as to whether the alleged harassment was sufficiently severe or pervasive. *See Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243 (10th Cir. 2001) ("an isolated incident may suffice if the incident is severe and threatening"). Plaintiff testified to additional incidents of harassment, however. According to plaintiff, on another occasion, Mr. Garbin approached her from behind and placed his arms around her, with his hands coming up under her breasts, and that similar incidents occurred two or three other times. Plaintiff testified that Mr. Garbin would often bump or rub up against plaintiff while walking in hallways, and that on one occasion he hugged plaintiff and would not let go until she pushed him away. Plaintiff also testified that Mr. Garbin indicated to her on one occasion that sex with him would surpass sex with her own husband, and she testified generally that "everything has always been about sex with" Mr. Garbin.

Defendant argues that plaintiff complains only of isolated contact with and comments by Mr. Garbin, and that the alleged harassment does not bespeak a sufficiently "hellish" working environment. The Court concludes, however, that plaintiff has testified to conduct that a reasonable jury could find to have been sufficiently severe or pervasive to create a hostile working environment. *See, e.g., Davis v. U.S. Postal Service*, 142 F.3d 1334, 1341 (10th Cir. 1998) (reversing summary judgment where jury could reasonably find objectively hostile environment based on unwelcome physical contact and other incidents); *Duvall v. Midwest Office Tech., Inc.*, No. 98-2546-JWL, 1999 WL 1423766, at *5-6 (D. Kan. Dec. 20, 1999) (question of fact whether

harassment was sufficiently severe or pervasive was created by evidence of sexually suggestive touchings and comments). Summary judgment is denied on this basis.

### B. *Affirmative Defense to Vicarious Liability*

Defendant next argues that, even if plaintiff can establish an actionable hostile work environment created by Mr. Garbin, plaintiff cannot hold defendant liable for that harassment. Specifically, defendant argues as a matter of law that plaintiff has not produced evidence sufficient to overcome its affirmative defense to vicarious liability. The Court disagrees.

In *Faragher* and *Burlington*, the Supreme Court set out the following rule for employer vicarious liability for sexual harassment:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.

*Faragher*, 524 U.S. at 807; *Burlington*, 524 U.S. at 765. Under this standard, defendant would be vicariously liable to plaintiff for any actionable hostile work environment created by her supervisor, Mr. Garbin.

The Supreme Court also recognized an affirmative defense to such liability:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, *see* Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not

9

> necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Faragher*, 524 U.S. at 807-08; *Burlington*, 524 U.S. at 765. An employer "is entitled to judgment as a matter of law under the *Faragher / Burlington* affirmative defense 'only if the evidence points but one way and is susceptible to no reasonable inferences supporting' the opposing party." *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1228 (10th Cir. 2000) (quoting *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1450 (10th Cir. 1997)).

Plaintiff does not contest defendant's evidence that plaintiff was not subject to any tangible employment action. Accordingly, the *Faragher* affirmative defense to vicarious liability is available to defendant in this case.

Defendant argues that it satisfies the first prong of the defense by the evidence of its promulgation of adequate anti-harassment policies and its prompt termination of Mr. Garbin upon receipt of Ms. Mitchell's complaint of sexual harassment. Defendant further argues that plaintiff's unreasonable failure to complain of sexual harassment by Mr. Garbin at any time during her employment satisfies defendant's burden under the second prong of the *Faragher* defense. Thus, defendant argues that it is entitled to

judgment as a matter of law on plaintiff's claim of vicarious liability.

The Court does not agree that defendant has met its burden to establish this defense as a matter of law. With respect to the first *Faragher* prong, the Court concludes that a reasonable jury could find that defendant did not take any action in response to prior complaints of sexual harassment by Mr. Garbin, and thus that defendant did not act with reasonable care in enforcing its sexual harassment policy.[2]

Plaintiff does not appear to take issue with the adequacy of defendant's policies prohibiting discrimination and sexual harassment. Instead, plaintiff cites a number of bases for its argument that defendant knew or should have known of sexual harassment perpetrated by Mr. Garbin prior to the complaint by Ms. Mitchell that resulted in his termination; that defendant did not act on such knowledge; and that defendant therefore did not exercise "reasonable care to prevent and correct promptly any sexually harassing behavior," as required by the first prong of the *Faragher* defense. The Court addresses each of those bases in turn.

### 1. PRIOR COMPLAINTS ABOUT SHAWN GARBIN

Plaintiff argues that she and other employees complained about Mr. Garbin's conduct prior to March 2005. Other than a declaration from Dorothy Joyner (addressed below), however, plaintiff has produced no admissible evidence that defendant received prior complaints *of sexual harassment* by Mr. Garbin. Plaintiff herself complained only

---

[2] In light of this conclusion, the Court does not address whether defendant can satisfy the second prong of the *Faragher* defense as a matter of law.

11

about Mr. Garbin's rudeness and management style. Plaintiff testified that employee Jamie Shelite complained to management about Mr. Garbin, but she did not know what behavior Ms. Shelite complained about. Plaintiff also testified that employee Evelyn McBride was rumored to have complained about Mr. Garbin to someone, but she could provide no additional details. Such complaints do not raise a reasonable inference that Mr. Garbin was engaging in sexual harassment of employees. Similarly, the fact that management counseled Mr. Garbin about his management style and the manner in which he addressed employees generally does not raise the necessary inference that defendant knew that Mr. Garbin was engaged in sexual harassment of employees.

Finally, in a written statement given to defendant during the March 2005 investigation, employee Donna Holmes stated that several employees had complained to her about sexual misconduct by Mr. Garbin. Ms. Holmes further stated: "When they asked if they could go to Julie [Melvin] and if she would do anything about it, I told them that it hadn't worked for me." Ms. Holmes's statement, however, is unsworn. Thus, the statement is not considered proper evidence that may be considered upon summary judgment. *See* Fed. R. Civ. P. 56(c). Although the fact that Ms. Holmes registered a complaint in March 2005 has not been contested by defendant and may be considered here, the statements contained therein constitute inadmissible hearsay if offered for the purpose of showing that Ms. Holmes had complained to Ms. Melvin on a prior occasion. *See* Fed. R. Evid. 801(c).

2.  MR. GARBIN'S CONSENSUAL AFFAIR

Plaintiff next points to evidence that Mr. Garbin had consensual sexual relationships with two different employees, although the evidence indicates that Mr. Garbin's superiors knew of only one such relationship. When she learned of that relationship, Mr. Garbin's superior, Ms. Melvin, asked a few employees about Mr. Garbin's behavior. Ms. Melvin and Ms. Frakes, the regional manager, proceeded to counsel Mr. Garbin about how such a relationship was inappropriate, and they instructed him to review defendant's policies concerning fraternization and sexual harassment.

A consensual sexual relationship does not constitute actionable sexual harassment, however, and defendant's knowledge of such a relationship does not raise a reasonable inference that Mr. Garbin was also engaging in unwelcome sexual harassment. Moreover, defendant's prompt investigation and counseling of Mr. Garbin at that time constitutes a reasonable response to reports of a consensual affair.

### 3. CONSTRUCTIVE KNOWLEDGE

Plaintiff also argues that Mr. Garbin's harassment of employees was sufficiently open and obvious that defendant should be deemed to have had constructive knowledge of the sexual harassment. Although the pervasiveness of harassment may support an inference of employer knowledge, the level of pervasiveness must go beyond that needed to support a hostile work environment claim; "[o]nly when the acts of harassment are so egregious, numerous, and concentrated as to add up to a campaign of harassment will the employer be liable for failure to discover the harassment." *Ford v. West*, 222 F.3d 767, 776 (10th Cir. 2000).

Plaintiff's evidence is insufficient to raise a question of fact on this basis. Plaintiff notes that, during the investigation after Ms. Mitchell's complaint in March 2005, defendant received a number of complaints of past sexual harassment by Mr. Garbin. Plaintiff testified that she had heard that one or two such complaints accused Mr. Garbin of exposing his genitals. Plaintiff has not provided any admissible evidence of such harassment having taken place, however. The unsworn statements to defendant during the investigation and the rumors heard by plaintiff constitute inadmissible hearsay if offered for the purpose of showing that harassment by Mr. Garbin actually occurred, and plaintiff has failed to provide firsthand evidence of any such harassment by affidavit or deposition testimony. *See* Fed. R. Civ. P. 56(c); Fed. R. Evid. 801(c). Similarly, allegations made in other harassment suits brought against defendant were not verified, and the fact that claims have been made does not provide the necessary evidence of harassment by Mr. Garbin at the heightened level of pervasiveness required by the Tenth Circuit for constructive notice. *See Ford*, 222 F.3d at 776.

The only admissible evidence provided by plaintiff to support her constructive knowledge argument is the following: plaintiff's testimony about harassment directed at her; plaintiff's testimony that she observed Mr. Garbin put his arm around another employee on multiple occasions; plaintiff's general statement, without details, that Mr. Garbin had his hands on employees all the time; and Mr. Garbin's admission that he had hugged employees. Such evidence falls well short of establishing sexual harassment by Mr. Garbin that was so open and obvious that defendant should be deemed to have had

14

constructive knowledge of such behavior.

### 4.     DOROTHY JOYNER DECLARATION

The only firsthand admissible evidence provided by plaintiff concerning Mr. Garbin's harassment of another employee is a sworn declaration by Dorothy Joyner. In the declaration, Ms. Joyner attests to the veracity and accuracy of all statements contained in a document attached to the declaration, which was a copy of a document that Ms. Joyner gave to defendant sometime after her December 2004 termination, apparently in March 2005 after Ms. Mitchell's complaint.  The document states in relevant part as follows:

> I was verbally abused and sexually harassed by Shawn Garbin (D.O.N.) from September 2003-December 2004. Shawn stated he only gave me a good evaluation because, [*sic*] he enjoyed seeing my thong (underwear). Shawn continuously asked for hugs and kisses. Shawn stated he could make me feel good, he would call me on my extension and ask me to come to his office so that he could see what I had on. He would always call me his chocolate. If things did not go his way he would make statements such as, "I will fucking fire your black ass". Julie Melvin has been aware of all the above incidents. In August 2004 Julie Melvin asked me how did I feel about Shawn Garbin and I stated to Julie, Shawn is a pervert, he was constanly threating [*sic*] the staff, also it is his way or no way.

In her sworn declaration, Ms. Joyner further states as follows:

> 6.     As stated in my complaint, in August 2004, I told Melvin that Garbin was mistreating staff, threatening everyone, and was a pervert, based on how he harassed me and other women.
>
> 7.     I had reported misconduct by Shawn Garbin on several occasions prior to submitting this statement.

Defendant characterizes this declaration as evidence only that Ms. Joyner told Ms.

Melvin that Mr. Garbin was a "pervert". The Court agrees that such a term might refer to conduct that does not constitute sexual harassment. The statement attached to the declaration, however, contains sufficient details from which a reasonable jury could infer that Ms. Joyner complained specifically about sexually harassing behavior to Ms. Melvin prior to Ms. Mitchell's March 2005 complaint.

### 5. PRIOR COMPLAINT BY ANGELA MITCHELL

Finally, Ms. Melvin and Ms. Frakes testified that they learned, at the time of Ms. Mitchell's complaint on March 24, 2005, that Ms. Mitchell had in fact complained to her supervisor on one previous occasion about sexually harassing behavior by Mr. Garbin. The supervisor had not investigated that complaint or reported it up the chain of management because Ms. Mitchell had asked him not to do anything, in the hopes that the incident would just "blow over". The supervisor was ultimately disciplined for failing to act on the prior complaint.

The Tenth Circuit has held that a low-level supervisor with authority over the reporting employee may be considered a management-level employee for purposes of imputing knowledge to the employer, thereby triggering the employer's duty to respond. *See Wilson v. Tulsa Junior Coll.*, 164 F.3d 534, 542 (10th Cir. 1998); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir. 1998). Thus, the knowledge of Ms. Mitchell's prior complaint to her supervisor may be imputed to defendant, thereby requiring an appropriate response.

Defendant notes that there is no evidence of the timing of this prior complaint by

Ms. Mitchell (it may have been made only days before her second complaint), and it argues that it therefore cannot be accused of failing to respond to that complaint in a timely fashion. It is undisputed, however, that defendant (through its supervisor) did nothing in response to Ms. Mitchell's first complaint, and the uncontroverted evidence suggests that nothing would ever have been done in response had Mr. Garbin's harassment not continued, thereby prompting a second complaint. Accordingly, a reasonable jury could conclude that defendant, by this failure to respond to a complaint, failed to exercise reasonable care to enforce its sexual harassment policy.

### 6. CONCLUSION

In summary, in attempting to show that defendant failed to enforce its sexual harassment policy adequately, plaintiff cited to various immaterial facts and failed to support many of her allegations with admissible evidence. Nevertheless, plaintiff has provided sufficient evidence from which a reasonable jury could conclude that Ms. Joyner or Ms. Mitchell complained to supervisors about sexual harassment by Mr. Garbin prior to March 24, 2005, and that defendant did not take any corrective action to address specifically the particular complaint. Accordingly, a reasonable jury could conclude that defendant did not exercise reasonable care "to prevent and correct promptly any sexually harassing behavior," as required by *Faragher*. *See, e.g., Curran v. AMI Fireplace Co., Inc.*, No. 04-1362, 163 Fed. App'x 714, 721-22 (10th Cir. Jan. 19, 2006) (reversing summary judgment on affirmative defense on basis that reasonable jury could find that employer did not take prompt and adequate steps to address complaints);

17

*Walker v. United Parcel Serv. of Am., Inc.*, No. 022-5097, 76 Fed. App'x 881, 889 (10th Cir. Sept. 11, 2003) (employer not entitled to summary judgment on affirmative defense where plaintiff had complained previously about harassment); *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1208-09 (10th Cir. 2000) (evidence that employer already knew of harassing behavior warranted denial of summary judgment on affirmative defense). Therefore, defendant has not met its burden to establish the first prong of the *Faragher* affirmative defense as a matter of law, and summary judgment is not appropriate.[3]

### V.     Punitive Damages

Finally, defendant moves for summary judgment on plaintiff's claim for punitive damages, pursuant to the good-faith defense recognized by the Supreme Court in *Kolstad v. American Dental Association*, 527 U.S. 526 (1999). "In *Kolstad*, the Court held that in a Title VII case based on vicarious liability for the acts of a managerial employee, the employer cannot be liable for punitive damages if the managerial employee's actions were 'contrary to the employer's good-faith efforts to comply with Title VII.'" *Cadena*,

---

[3] The Pretrial Order does not make clear the basis on which plaintiff seeks to hold defendant liable for its employee's harassment. The complaint could be read to invoke theories of employer liability based on negligence and vicarious liability. In its motion, defendant argues against employer liability only on the basis of the *Faragher* affirmative defense, which applies to vicarious employer liability but not to liability based on negligence. *See, e.g., Wilson v. Tulsa Junior Coll.*, 164 F.3d 534, 540 n.4 (10th Cir. 1998). The Court notes, however, that the same evidence precluding summary judgment on the basis of the *Faragher* affirmative defense would preclude summary judgment on a claim of negligence based on actual or constructive prior knowledge of sexual harassment by Mr. Garbin.

18

224 F.3d at 1209 (quoting *Kolstad*, 527 U.S. at 545). Although there is no definitive standard for determining what constitutes the necessary good-faith compliance with Title VII, the Tenth Circuit has recognized that "an employer must at least adopt anti-discrimination policies and make a good faith effort to educate its employees about these policies and the statutory prohibitions." *Id.* at 1210 (citing *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1248-49 (10th Cir. 1999). "Moreover, *Kolstad* itself suggests that the good-faith-compliance standard requires the employer to make 'good faith efforts to *enforce* an antidiscrimination policy.'" *Id.* (quoting *Kolstad*, 527 U.S. at 546).[4]

Defendant argues that its promulgation and dissemination of its sexual harassment policy and its education of its employees concerning the policy are sufficient to satisfy the *Kolstad* defense. Defendant has not offered any analysis, however, to explain how it could still satisfy this standard while failing to satisfy the first prong of the *Faragher* affirmative defense. The Court concludes that the same evidence that precluded summary judgment on the issue of defendant's vicarious liability—evidence that defendant failed to address prior complaints of sexual harassment—also raises an issue of fact concerning whether defendant attempted to enforce its anti-harassment policy in good faith. Thus, summary judgment is denied on plaintiff's claim for punitive damages.

---

[4]The Tenth Circuit has not decided whether this *Kolstad* good-faith defense represents an affirmative defense on which the defendant bears the burden of proof, although it has noted that several other courts of appeal have so determined. *See McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1137 n.3 (10th Cir. 2006). In this case, the Court concludes that a question of fact would remain with respect to this defense whether or not defendant bore the burden of proof.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion for summary judgment by defendant Medicalodges, Inc. (Doc. #34) is granted in part and denied in part. The motion is granted with respect to plaintiff's constructive discharge claim, and any such claim—asserted either as an independent cause of action or as an element of damages—is dismissed. The motion is denied in all other respects.

IT IS SO ORDERED.

Dated this 27th day of June, 2007, in Kansas City, Kansas.

                                                  s/ John W. Lungstrum  
                                                  John W. Lungstrum  
                                                  United States District Judge